McIlvatne, C. J.
This cause, and June v. Purcell, decided at this term and reported ante, 396, having a question in common, were considered together. In that case it was-held, that the title of a riparian owner of land bounded by a navigable stream in this state, extended to the middle or thread of the stream. It follows, upon the principle announced in that case, that the locus of the offense alleged in this, though upon the surface of a navigable stream, was within the boundaries of Tindall’s land, and was embraced within the literal meaning of the notice, “No shooting or1 hunting allowed on these premises.”
It is true, however, that the right of Tindall to so much of his lands as was covered by the waters of the Sandusky river, the same being a navigable stream, was not exclusive, but. subject to the right of the public to use the same as a highway, so that the entry of Shannon within the boundaries of Tindall’s premises, to wit, within the limits of this public highway, did not, per se, make him a trespasser; and clearly, an action against him for trespass guare clausum fregit, could not be maintained.' Hence, it was claimed by defendant, that his conviction was wrong, because, as is claimed, this-section of the statute applies only to persons who wrongfully *427 break and enter tbe close of another contrary to his expressed will.
The provisions of the statute were not intended to punish trespassers guare elcvusum fregit, merely because they may have been guilty of a trespass ; but were intended to punish the act of killing, shooting at, or pursuing game on the lands of another, against which notice may have been given as provided in the statute; so that a person rightfully on the premises of another may commit the unlawful act, as well as one who commits a trespass by entering upon the premises.
It seems to us, that whatever change this statute may have made in respect to the law in relation to trespass on real property, the main purpose of the legislature was to confer upon the owner of lands within this state the exclusive right to hunt and kill the designated game upon his own premises, and to protect him in such right, provided- he complies with the prescribed conditions in regard to notice.
And with regard to notice, if the lands be “ inclosed and improved,” or if the boundaries be “ defined by stakes, posts, water-courses, ditches or marked trees,” verbal or written notice “ not to hunt thereon,” will bring the offender within the operation of the statute. And where a water-course, for instance, a navigable stream, constitutes a boundary, it is the opinion of a majority of the court, that all persons who have received verbal or written notice not to Imnt upon the lands of the owner, are bound to take notice that his lands extend to the middle of the water-course, if such be the fact.
But if the lands be not “ inclosed and improved,” or if they be not “ defined by stakes, posts, water-courses, ditches or marked trees,” as well as where they are so defined, the owner may bring himself and his lands within the protection of the statute by setting up, in some conspicuous place thereon, “ a board inscribed in legible English characters thus, No shooting or hunting allowed on these premises.” And in such case, all persons engaged in shooting at, killing or pursuing the designated game, must take notice, not only of the statute, but of the setting up of such board, and also of the extent or boundary of the lands on which the same is set up. And in *428 respect to this notice, it makes no difference whether the lands ■or any part thereof be covered by water or not.
It is claimed,' however’, that this statute was not intended to protect lands covered by the waters of a navigable river. A majority of the court can see no grounds upon which lands covered by navigable streams should be excluded. They are as much the subject of private ownership as unnavigable streams. There is no distinction between them made by the terms of the'statute. True, navigable streams, in this state, are ■declared to be public highways ; but the right to use a public, highway is not abridged by protecting the owner of the fee in the exclusive right of killing game therein. Travel and commerce are not thereby hindered. And as the power of the legislature to protect game, or the exclusive right of the owner •of’land to kill the same on his own. premises, is as ample over land covered by water, whether navigable or innavigable, as it is over dry land, and as there is no attempt to distinguish between them in this statute, we must hold that all alike are within the protection of this statute.

Exceptions sustamed.

White, J.,
did not concur. He was of opinion that the .statute, being penal, must be strictly construed, and that it did not embrace game found upon the open public highways.